The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Robert J. Stegman presiding. Thank you, Mr. Bailiff. This is our case number 4-22-0302, Gabe Young and Netta Young versus Dustin Wilkinson doing business as Hammer at Construction. Mr. Potter, you're appearing on behalf of the appellants, is that correct? I am, Your Honor. Mr. Guzzardo, you're appearing on behalf of the appellate. Yes, Your Honor. Matt Cole. Okay, then Mr. Potter, you may proceed, sir. Thank you, Your Honor. May it please the court and counsel. I started in with the issue of race judicata. Ordinarily, we think of claim splitting as the same plaintiff bringing one case and then bringing another case on part of the last claim. However, as I learned in this case, it also applies to the first case and either won or lost, actually. And then the defense is used as an affirmative case to plead as a plaintiff. Of course, not all defenses work that way. Minority or payment or other kind of discharge can't act as a standalone plaintiff's case. However, some do work, like what we have here is a situation that is clearly barred by the law stated in the passage from Amateur Second on page eight of my brief that simply says you can't interpose a defense in first case and then use that defense as a basis for your second case. That is claim splitting, and it's not allowed. The only cases that I cite are not exactly on all fours with this case. But... Mr. Potter, isn't it generally the rule in Illinois that counterclaims are not mandatory, that the joinder is not required as a general rule? That's the general rule, but I addressed that in my reply brief where it says that that has nothing to do with race judicata. And that is on... that's the Cabrera, I believe. Well, if you're writing the ICL on this, if this case came down as you're describing it, wouldn't the takeaway be that whenever a contractor brings a mechanics lien foreclosure action, that any claim by the homeowner must be joined? Isn't that the takeaway from your position? Yes, it is. And I'll tell you, there are two reasons why. One is the... it is... it is the... I believe it's Cabrera, and it's in my reply brief, and it's... it says that... it's on page three. However, whether a counterclaim is compulsory has no bearing on whether race judicata bars this assertion in a later proceeding. That's part of the citation from the case. What is important is not whether a particular claim is compulsory, but whether the claim should have been considered during the prior action. So, I think that's already been pretty well decided, and that is in the Cabrera versus First National Bank of Wheaton. Mechanics lien foreclosure actions are common, and I don't think you've presented us with a case that establishes that a homeowner's claim for damages or breach of contract arising out of that construction is a compulsory or must be brought in the lien action, or it would be foreclosed by race judicata. Well, it's... I don't know why it wouldn't be under the general ban, the general discussion of the Cabrera case, number one. Number two, the statute, section nine of the Mechanics Lien Act, says that all claims of all parties can be decided based on nothing but the complaint. And once... and once you're in the Mechanics Lien Act action, you're stuck. You can't say, I don't think I want to do this anymore. So, by that logic, even if the homeowner never filed it, made a defense of non-performance, you would say race judicata would apply? Correct, because all claims are adjusted in the Mechanics Lien Act, and that's just good public policy, because you don't want to have piecemeal litigation when it comes to... Mr. Carter, I have a question about that. It seems to me we're dealing with entirely different matters. On the one hand, the contractor issuing a Mechanics Lien often is more quickly done than the plaintiff. The person for whom the work was done might even be aware that there's a problem. And it seems to me that the contractor has a right to pursue a Mechanics Lien matter, and I don't see why it should follow at all logically or as a matter of policy that the person for whom the work done, if they're going to... they have concerns that the work was shoddy or not up to par, must at that point make a counterclaim in the Mechanics Lien claim being brought against them or lose it. That's what you're essentially saying, isn't it? Well, yes and no here, because remember this case originated when the plaintiff filed suit on the contract. The plaintiff filed the suit on the contract. The defendant defended with a Mechanics Lien claim. So the plaintiff was already ready to go, and then found out that there was a plaintiff's claim. I understand these facts are a little unusual, and that's what happened here. I want to go back to my question. The policy, the rule you're saying this court should recognize, or if not establish, is when Mechanics Lien action is brought, the person for whom the work was done has to counterclaim them or forfeits it. I think that's right. I think I think there's room there if you didn't know about something and your house fell down, you know, a year later. But I think as to known issues, you have to come forward and put them before the court to adjudicate. Why? What's the purpose of that? What's the public policy served by that as opposed to giving the homeowner or the person for whom the work was done an option within the normal statute of limitations to bring a cause of action? Well, because of Cabrera, which I just read from, and because of Section 9 of the Mechanics Lien Act, that how do you adjudicate a Mechanics Lien? And what the guy is owed or not owed if the homeowner is sitting back there and say, well, I guess I'm going to wait. Well, so the Mechanics Lien Act says it may be brought. It doesn't say it must be brought, which is maybe brought and Cabrera says it must be brought. What courts decided Cabrera? That is Second District, which is where we were. Well, the nice thing about the appellate court is we're not required to follow any prior decisions, unless they're of the Supreme Court of Illinois. So we can, if we think it's not correct, disregard it and conclude otherwise. Why shouldn't we? Well, I used Cabrera because it compiled a bunch of other citations. It also cited Sanders, which is a federal section and it cited that. But your argument, just to get to the crux of it, your argument is to read the statute that you cited as if it said a counterclaim must be brought, not may be brought, must be brought in the Mechanics Lien action or it's forfeited. Isn't that what you're arguing to us? I think as to known issues, that's correct. Thank you. Go ahead. All right. And really a Mechanics Lien is like, a Mechanics Lien foreclosure is like an accounting suit with a remedy. You know, a mortgage foreclosure is a note collection with a remedy. Same thing with a Mechanics Lien. So in accounting, for instance, you can't say, here's part of my numbers. I'm going to wait for the other part. But I'll move on from that. Can I ask you, Mr. Potter, about Cabrera? Doesn't Cabrera state that this prohibition would be true only if the latter action would nullify the results of the first one? I don't, I don't, I can't tell you that. I don't think so. But otherwise, it wouldn't, it wouldn't have gone into the, it wouldn't have used the language. Let me read you from Cabrera then. Ray Ciudicata, the doctrine bars claims based on facts that would have constituted a counterclaim or defense in the earlier proceeding were successful prosecution of the later action would either nullify the earlier judgment or impair the rights in the earlier action. This second case does not impair the rights from the first action, does it? Well, it does. Your client lost both of them. Well, yes, but in order to properly calculate damages in the second case, you have to start at the full contract price to avoid double recovery of not having to pay the, so the plaintiff wouldn't have to not pay the last $5,000 of the contract and get damages for that last $5,000. You have to start at the full contract price. Well, my client's already lost the last $5,000. So to calculate damages correctly, you have to. No, but you lost the case making the claim for that. Correct. And so nothing in that first case is going to be negatively affected by the second case. But you have to calculate the damages in the second case by starting at the full contract price, thereby giving back the $5,000. Okay, but how is that inconsistent? Or how does that nullify the results of the first case, which your client simply lost? I know that my client lost it, but it is to say, okay, we know what happened in the first case, but in order to make the second case come out correctly, we're going to have to give you back the $5,000 that we took away from you in the first case. There wasn't a judgment in the first case. Judgment of? In favor of the defendant, the contractor. Well, we gave you the plaintiff. We said the plaintiff didn't have to pay the last $5,000 in their contract. Was that per judgment, or was that per your client's? Well, that's what was owed, and the judgment was no mechanics lien. Defendant recovers nothing. So a later judgment doesn't seem like it would contradict that. So a later judgment would say, okay, we calculate the plaintiff's damages based on the full contract price, thereby giving back the $5,000 that we took from the defendant in the first case. Now we'll calculate the damages. So it would have to adjust, I'll say, the judgment that was given in the first case. Well, it wouldn't affect the judgment at all, though, would it? Because there was no judgment in favor of your client. There was a judgment in favor of the plaintiff, which would have to be, the violence would have to be done to that judgment by the second case, saying, okay, we're going to essentially ignore that judgment and care for the damages the proper way in the second case. But the judgment isn't nullified. The judgment isn't inconsistent. Well, I treat that in section four of my brief. But I just, I don't think Cabrera is as narrow as you seem to think it is, Your Honor. And otherwise, they wouldn't have used the language that compulsory counterclaims are irrelevant. Whether it's compulsory or not, since it's the last line of what I underlined it on page three, a plaintiff's assertion that the claims set forth in the present case were not compulsory counterclaims and bankruptcy in the bankruptcy proceeding is irrelevant. It makes no difference for race, gender, or title purposes, whether the counterclaim is compulsory or not. And that's the best I can do, I guess, on that. Now. Counsel, I have a question turning to the issue of the expert and house testimony. Did your client renew the objection to house testimony on the ground of late disclosure when Howe testified? I know there was a motion in the testimony file to bar the testimony, but didn't there have to be an objection to his testimony at the trial in order to preserve this? Oh, I objected. I did a quite extensive voir dire of the witness and then moved to bar his testimony before he even testified much. And that motion to bar was denied. All right. Have to be a subsequent objection. I'm sorry. Did there not have to be a subsequent objection? That was in the trial. That was that was in the. At trial. At trial. And was did the record reflect that? Subsequent objection. Oh, sure. You mean. Yeah. On 219 grounds, was that renewed at the time of the eliminate examinators? I believe it was to eliminate eliminate. I didn't examine him. I, I, I was there at trial. And, you know, yeah, I, I checked it. I. At the time you've watered him, I know you had a lot of comments about his methodology, but did you re-raise the 219 issue? I can't remember. I just can't remember. Thank you. Judge. Okay. And then 1 other just still focusing on house testimony. Didn't your objections really go to the weight of his testimony as opposed to admissibility counsel? No, not at all. Your honor. How not? The, if you use bad, if, if, if the, if the. Experts uses bad methodology. That is violative of the Frye standard and it, it goes to admissibility and I will. The rules say that that the evidence shouldn't be. Rule 702 says if scientific, technical or other specialized knowledge will assist the trier of fact. Well, this, this, this, this evidence, we say, I say, does not. Assist trier of fact, because it was done wrong. And, and, and the, um, the judge, the trial court can't say, well, it's done wrong, but it goes to admissibility. It goes to a weight. That's not what, that's not the way Frye works. Now, counsel, you didn't raise Frye below though, did you? That's a new argument on appeal. I, by name, by Frye standard by name. Well, I mean, I think, don't we have to raise it by name if that's what we're talking about counsel? Well, I, I should have objected based on bad methodology below. Well, that's Frye is very specific. Frye isn't quote bad methodology. Frye, the Frye test applies really to new or novel scientific methodologies. Counsel, isn't that the common understanding? Well, it said, yes, but Frye says, if you use a methodology, that's not accepted in your profession, it's not, it's not, it's not admissible. And, and, and Mr. Howe's methodology, you can look at the, at the appraisal Institute books and the standards, nowhere is his methodology accepted in the profession. So whether it's, whether it's new or novel or just wrong, it's not accepted in the profession. So it violates Frye. But you didn't ask for a Frye hearing. You didn't ask the trial court for a Frye hearing, did you? I, by name? No, but I, I, I certainly, certainly. Boy, there's a witness and tried to keep out the testimony based on bad and improper methodology. And, and more than once I objected during trial also that the guy didn't know what he was doing. And no, I don't believe it goes to weight instead of admissibility at all. There's no reason to accept it as so bad. Just, just on, on more than. You'll have an opportunity to address this again in rebuttal. Okay. Thank you. Mr. Cole, may I have, I believe may present your argument. Thank you, your honors. May it please the court, opposing counsel. My name's Matt Cole. I do represent the plaintiffs appellees, Gabe and Annetta Young in this case. Your honors as opposing counsel has indicated. I think the primary issue with respect to this case lies on the application of race judicata. It's our opinion that the trial court properly addressed race judicata and found that it was not applicable in this case. I think the large portion of that is based on the fact that while there was a previous case in which the defendants counterclaim went to trial on their mechanics lien foreclosure, it did not go to trial on the issue of damages or breach of contract to our client's property. I think that is substantially important here, your honors. It's important, I think, for the court to recognize the fact that the specific facts at play under a mechanics lien foreclosure are distinct from that which would be addressed in a breach of contract claim brought by our clients for essentially diminution in value to the property or the cost of repair to make good. Well, what about the liability questions? Don't both the mechanics lien claim of the contractor and the homeowner's contract claim have as a common element whether the contractor's work was done in a good workman-like manner and in conformity with the contract? Your honor, there is some overlap in facts. I would not disagree with that statement. I think certainly the difference here would be in the mechanics lien foreclosure case, really the only evidence that would be brought forth by the contractor would be whether or not they substantially complied with the terms of their contract and completed the work in a proper manner. On the other end, when we're talking about a breach of contract claim for damages, the specific facts that are going to be brought to light, your honor, other than the fact that, of course, we do have to determine whether or not the work was done properly, is what is the measure of damages? How is that calculated? The extent of the damages. Those aren't things that would necessarily be raised at all in a mechanics lien foreclosure complaint. And that's the very reason why res judicata doesn't apply. If you look at the elements, and it's interesting that it hasn't necessarily been addressed line by line as to what the elements here are for res judicata. You have to have a final judgment on the merits. That's not the case here. Our client's complaint was dismissed in that prior case voluntarily with leave to file this renewed litigation. That was done. There was never a final judgment on the merits with respect to our client's claim for breach of contract, diminution in value damages for the reduced value of their property. What about Mr. Potter's suggestion that you're having either defended or raised a defense against his claim that that was reduced to a final judgment? Does that trigger res judicata? I don't believe so, your honor. And again, it's all based on what are the facts that are necessary for each of the claims here. Again, our client certainly raised a defense and the mechanics lien foreclosure complaint. And essentially it was that the work that was done was shot. But again, that would not necessarily tie those facts to the renewed complaint that's at issue here. Because again, damages, diminution in value, what was done wrong, and to the extent of how that was done wrong aren't really at play in that initial proceeding. So again, there are overlaps. But I think the important thing to recognize is the statute here doesn't require us to issue at the mechanics lien foreclosure case. I know that the Cabrera case had been mentioned at many points by opposing counsel here. But I think that case is distinct in many respects, and primarily because their ruling and their analysis was based on the fact that if you have a final judgment between the same parties discussing the same set of operative facts, if it acts to nullify what that second proceeding would be, then it should be blocked by res judicata. That's not the case here. The set of operative facts that we're talking about aren't necessarily related just to the quality of work that was done, but specifically with respect to the damages that were caused as a result of it. And I really think that is the distinction here, Your Honors. Again, this is not something that is required. The Mechanics Lien Act under Section 9, the way that it has been interpreted by ourselves and by the trial court below is that that section certainly would apply to lien claimants. Certainly, if they have a stake in potentially enforcing their own mechanics lien, they should be required to bring their own separate claim for recovery. But at the same time, it doesn't go the other way. There's no requirement that the owners of the property have to then, in defense of the mechanics lien foreclosure case, put on their entire case in chief for damages. That's just not in the statute itself. That's not the requirements of the law. And in our opinion, Your Honors, that's not what case law requires either. To the second point, Your Honors, unless there are other questions for Ray Ciutatata. Is it claim splitting, the fact that you raised a defense with common elements in the mechanics lien case and then raised an affirmative claim in the subsequent case? I don't think so, Your Honor. And again, I'd go to the same operative facts that we're talking about here. These are separate claims. They are. You have one that is by statute authorized under the mechanics lien. That is something that was addressed in the prior proceeding. But we have a completely separate claim that has been brought by our clients that never had to be raised in that initial proceeding. So, yes, there are some facts that are shared here. But when we're talking about the operative facts, what are the damages? What harm was caused to our clients as a result of a breach of contract versus substantial performance, which is all that's required under the mechanics lien statute? I think that's where the distinction lies. I don't believe that this would be considered claim splitting based on that analysis alone. Your Honor. With regard to the other issue of the expert, didn't the plaintiffs have an obligation to disclose the existence of or come up with an expert? And that wasn't done. Your Honor, that was done. And of course, I'm sure that the I'm sure that the court is aware of the facts here. There was a prior proceeding in which our clients had filed a complaint for breach of contract up to and leading into the trial more than a month ahead of time. There was an honest mistake as to the burden of proof for damages. It was requested at that time that we have leave to disclose an expert witness to account for those at trial. It was denied essentially on opposing counsel and his client's insistence to proceed to trial on the mechanics lien foreclosure case, which is why we voluntarily dismissed the case. Again, that's certainly in compliance with the rules. We are permitted to dismiss our claim, which was dismissed in its entirely entirety, and it was its own separate claim. So it was raised. How was an attorney's failure to know which side has the burden of proof here in a case that the attorney filed not unreasonable noncompliance with the rules? Well, Your Honor, if you're alluding to Rule 219 E, which I think is something that has by opposing counsel. I mean, that's used as a sanction, essentially a discovery sanction. And as part of that, there's a number of elements to look at. Certainly some of them is good faith of the party. The trial court did an analysis under those pace factors, which is essentially, you know, is this something that would prejudice the opposing party? Was it done in good faith? Again, this was tried. This was attempted to be raised in the initial proceedings, certainly well in advance of trial. This wasn't something that was decided on the court steps of trial. It was done a month in advance. Ultimately, defendants insisted on proceeding to trial in the subsequent proceedings. There was plenty of opportunities for our witness to be disclosed, and it was. So, Your Honor, I think when we're talking about what the rule is, as far as 219 E goes, it's a discovery sanction that's basically used to try to keep out, you know, bad actors. I don't think that the facts here show that we acted in bad faith by using that mechanism in order to renew the claim in this subsequent proceeding. How long after the initial proceeding was the subsequent one? As far as timing for the filing of the renewed complaint? If I heard you correctly, it was within several months after the first complaint was filed, certainly within that year period. So this wasn't something that was unnecessarily delayed, Your Honors. Once our complaint was voluntarily dismissed, we took action to make sure that it was timely filed in accordance with the statute. That's certainly the case. Again, this isn't an example where we're trying to buy additional time. Is there an issue about the timeliness of the disclosure of the expert regarding the subsequent proceeding? Well, Your Honor, I don't think that there was an issue at all as far as the timeliness of the disclosure of our witness. In the subsequent proceeding, there were many opportunities for the defendant to object or to disclose their own witness. There were a number, within our briefs, there were a number of citations to the documentary showing subsequent status on discovery that was preceded. Everyone knew that we were proceeding with discovery. Everyone knew that disclosure of an expert witness was going to occur. I do believe it was timely. What was untimely was the objection to us disclosing our expert witness. I think that's really the focus of that matter, Your Honor. Well, going to the question asked, I believe by Justice Zinov, is my understanding correct that there were pre-trial matters, concerns expressed by the defendant regarding this expert witness's testimony, trying to challenge it, and then they were denied. But then when the expert was called to justify a trial, no objection was renewed? That's correct, Your Honor. I mean, all of that was essentially pre-trial. All the issues that are being discussed now were, for the most part, raised pre-trial. Again, I think there was certainly sufficient time for the defendant to address the issues, which it had been prior to trial. At trial, again, defendant and their counsel had their own opportunity, if they so wish, to present their own expert witness in this case. Well, aside from presenting their own expert witness, there was no objection made to the testimony of the expert you called at trial? That's correct. Go ahead. The only objection really is related to the methodology which Attorney Potter has been discussing. I think there is an issue with respect to applying FRI here, Your Honors. That was never specifically raised. But from our position, whether FRI really was raised properly or not for purposes of appeal is irrelevant because it doesn't apply here. It's clear, and it was cited in a case that was raised by opposing counsel in Wright Commitment of Simons, that the FRI test is really only used for purposes of novel scientific methodologies. That's not the case here. It's clear from the record that our expert witness here was a qualified real estate appraiser with 40 years of experience. He applied a comparative sales approach, which is widely accepted for determining market value of the properties in an as-built condition with the issues as they existed, and comparing them to what a buyer would pay for the home after it was repaired. I don't think FRI applies at all. On that basis alone, I think it was proper for the judge at the trial court level to admit our expert witness testimony. Excuse me, Your Honors. I think there were some other issues as well, as far as methodology goes, that are pretty telling here, at least as far as how opposing counsel approached the case. Essentially, in our refiled case, Your Honors, if they wanted to challenge the methodology that was used or the weight of our expert testimony, they could have brought their own witness. They certainly could have provided opposing or adverse testimony from their own witness that would challenge the methodology that was used or the information, at least, that was used to come to his conclusion, and it just never happened. I don't think that's a basis to overturn the trial court's reliance on the expert witness, certainly when it's clear here that he was using a generally accepted method for determining value. Your Honors, and this was a point that was mentioned briefly, but I do think that it's important to raise. There is an issue with respect to whether or not our clients failed to mitigate their damages. I think that is certainly easily addressed, and it ultimately boils down to whose burden that is to prove. You know, opposing counsel has issue with the fact that much of the work that was done to correct the deficiencies in the home were done by replacement rather than repair. But again, the only people that testified at trial, other than the defendant himself, were the persons, the contractors, the experts who said that that was required. It was certainly within our client's right to rely on what it took to get it fixed. Again, there's no evidence to show that there was any other reason for our clients to do anything other than what their contractors recommended, which would be repairs. That's on the defendant and their counsel to prove, and there simply wasn't any evidence of that at the trial court. So I would stress to this court that it shouldn't entertain any argument on mitigation of damages, because again, there's no evidence to rely on here other than what was provided by the plaintiffs themselves. Anything further, counsel? That's all I have, Your Honor. Thank you for your time. Thank you, counsel. Mr. Potter, any rebuttals, sir? I certainly have some, Your Honor. Thank you. Number one, maybe going backwards here, the contractors didn't say it was required to do all this tear out and rebuild. The contractor said that's what the homeowner wanted. They didn't say, if I don't do this, the house will fall down or anything like that. There was nothing unsafe about any of those conditions. It was not required for any kind of safety or other reasons. Is that the standard? Is the standard safety? Well, it's one of them. I would suppose it's also a standard for whether you use cost to cure immediately or whether you discounted into the market value. But the contractors didn't say this must be done by tear out. They said, sure, we can tear it out and we'll do it and start over. Number two is there's no place in anything that was furnished by the appraiser himself or the plaintiffs that says that the dollar for dollar cost to cure method is a generally accepted method. There's no case that says that. Mr. Potter, that's, I think, the fry inquiry. And before the plaintiff is put to that burden, don't you have to show that the methodology is new or novel? Well, I did in that trial. How is it new or novel? I know you don't. I'm sorry. I'm sorry. It's not new or novel. You're wrong. Right. So that means it's not really a fry issue. It's a simple admissibility or weight issue for expert opinion. OK, either way, it shouldn't. I mean, wrong methodology and a bad opinion based on that shouldn't go to weight. It should go to admissibility because it doesn't assist the dryer effect. And if it were OK to say, OK, I'm going to figure out the value after by taking dollar for dollar cost, if you're taking it against the completed value and subtract, that would happen all the time. We'd have 100 cases that say that, that's OK. But you know what? There's not one case that says that's OK. The trial court didn't do that in order to assess a damage amount. It was to determine which measure to use, right? The trial court should have taken each measure of damages and decided which one to apply. The trial court, I guess, it's hard to know from the lack of, he didn't show his work, but I guess took the cost to cure dollar for dollar, which is just bad methodology in the first place. And then he used that and came up with a number. We're not quite sure how. Based on these markups, for what reason, the appraiser misunderstood his assignment. The appraiser thought, well, I'm going to appraise both of these on the same day, on the same day of my visit, in the as-built condition before, meaning it's the before condition and the fixed condition on the date of my visit. Then I'm going to back up the as-built to four or five years, whenever it was. Then I'll add markup for contractor fee and uncertainty and inflation. So instead of taking the known numbers on what was actually done, he backed it up and injected uncertainty into it, marked it up, and that's his number. That makes sense. But the trial court used the total cost of repair. Maybe. We don't know how the trial court got to his number. But assuming the trial court did that, then the trial court used a method that is unacceptable. That's against them. That is not recognized in the industry. That is against the manifest way of the evidence. There are cases that say, I think Judge Wheaton got reversed for using one element of damages on fixed costs that shouldn't have been in there. Reversed. There are 15 different issues with our methodology and what should have been included, but it's hard to know how to attack the judgment when the work isn't shown and we don't know what all was in there. He just came up with one number. We don't know if he started at the full contract price or not. We don't know what he included. We do know he disallowed two bills. But. Counselor, your time is up. Thank you for your presentation and argument. The court will take this matter under advisement and will stand in recess.